

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00072-CV

**IN THE INTEREST OF S.S.**, F.C.S., and A.C.S., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-PA-02493
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  July 19, 2017

AFFIRMED

Adelina and Adam appeal the trial court's termination of their parental rights to S.S., F.C.S., and A.C.S.[1] They argue there is legally and factually insufficient evidence that termination of their respective parental rights is in the children's best interest. We affirm the trial court's judgment.

### BACKGROUND

In December 2015, the Department of Family and Protective Services filed suit for conservatorship of the children and to terminate Adelina's and Adam's parental rights. The Department removed the children after receiving a report that A.C.S., who was less than a month

---

[1] To protect the identity of the minor children, we refer to the children's parents by their first names and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

old, had multiple bone fractures. The children were placed with a foster family, and the trial court ordered Adelina and Adam to complete a family service plan, which included individual counseling.

The case proceeded to a bench trial during which Adelina, Adam, Department caseworker Valerie Mendiola, the children's foster mother Nancy, and Adelina's counselor Stephanie Valdez testified. The trial court also admitted into evidence a July 2016 affidavit Adelina filed when seeking a protective order against Adam, a 2011 order terminating Adelina's parental rights to two other children, a 2015 order in which the trial court found that appointing Adam managing conservator of his other child was not in the child's best interest, and photographs of Adelina with the children.

After taking the case under advisement, the trial court appointed the Department as the children's permanent managing conservator and terminated Adelina's and Adam's parental rights. The trial court found Adelina knowingly endangered the children, had her parental rights to another child terminated for knowing endangerment, and failed to comply with her family service plan. The trial court found Adam knowingly endangered the children and failed to comply with his family service plan. The trial court further found that termination of Adelina's and Adam's parental rights is in the children's best interest. Adelina and Adam appeal.

## THE BEST-INTEREST FINDINGS

Adelina and Adam challenge only the sufficiency of the evidence to support the trial court's best-interest findings. They do not challenge the trial court's findings of grounds for termination. Because Adelina and Adam filed separate notices of appeal and briefs, we address their appeals separately, considering the applicable standard of review, the best-interest standard, and the evidence at trial.

**A. Standard of Review**

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

**B. The Best-Interest Standard**

The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*, 401 S.W.3d at 684 (internal citation omitted). "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

**C. The Evidence at Trial**

Adelina testified that when A.C.S. was only twenty-five days old, he had fractured ribs and his legs were broken due to being twisted. Adelina thought it was possible Adam had caused the injury and stated Adam "does have a temper at points." She explained Adam has choked Adelina and hit her, giving her "a busted lip." She stated that at the time of trial, she and Adam were no longer in a relationship, and she wanted his parental rights to the children terminated because of his temper and the threat he posed to the children.

Adelina stated Adam had been arrested for violating a protective order she obtained against him. She explained Adam had violated the protective order when she voluntarily "picked him up from work." Adelina also testified that after Adam was arrested, she went back to his place of employment, retrieved his paycheck, and gave the money from Adam's paycheck and her own money to a friend to post Adam's bail. According to Adelina, it was the last time she spoke with Adam.

Adelina testified a trial court had terminated her parental rights to two other children, H.E. and A.H., but she said there were never any "issues" with her parenting. She stated that during the termination proceedings involving H.E. and A.H., she violated her safety plan. Adelina also stated she receives "disability" because of her anxiety, depression, bipolar personality disorder, and "a private diagnosis." She later testified that when she was a child, she was placed on medication after hearing voices telling her to kill her family, but she went off her medications after having children. Adelina further testified she had been arrested for theft and unauthorized use of a motor vehicle.

Adelina testified she has an apartment by herself, but she has not provided any financial support for the children, who she knows have some developmental issues. She stated that when the children were living with her, they received occupational and speech therapy.

The trial court admitted into evidence Adelina's affidavit supporting her request for a protective order. Her affidavit described an incident on June 22, 2016, when Adam hit her in the face and choked her with his forearm. She further swore in her affidavit that Adam broke into her home in May 2016; on another occasion in 2012, he "got so angry that he choked [her]"; and in 2011 when she was pregnant with F.C.S., he "got super drunk and punched [her] and choked [her]." Adelina swore she was afraid of Adam and feared for her life. Adelina testified that during

the five years of their relationship, she filed "more than two" police reports against Adam for abuse, but she would reunite with him because she was in love.

Caseworker Mendiola testified she had concerns about Adelina's ability to be protective of the children, and throughout the case, Adelina had lied about her relationship with Adam. Mendiola explained she had made unannounced visits to Adelina's residence twice, once in April 2016 and once in June 2016, and Adam was present both times. According to Mendiola, Adelina told her on May 6, 2016, that she thought Adam had hurt A.C.S. Mendiola testified Adelina obtained a protective order against Adam in July 2016, but Adelina continued to text him and was "still harassing [Adam's] . . . mother."

Mendiola further testified Adelina missed several individual counseling appointments required by her family service plan. Adelina started counseling again after Mendiola addressed the issue with her. Mendiola also testified Adam failed to complete his anger management course, missed his individual counseling appointments, and has been "in and out of jail." Based on Adam's history, she opined Adam was unable to provide the children with a stable home environment.

According to Mendiola, Adam and Adelina attended visits with the children and the visits "go well," but Adam would make false promises to the children, such as telling them he would bring food to future visits and that the children were coming home. Mendiola stated that during home visits, A.C.S. and F.C.S. "always run back to [the] foster mom," and A.C.S. "just kind of holds on to foster mom." Mendiola also stated F.C.S. has to be directed to sit with her parents during visits. She testified A.C.S. and F.C.S. have no bond with Adam and Adelina, but S.S. has a bond with Adelina and "gets very excited when she sees [Adelina]." Adam's mother visited with the children four times, and after one of the visits, Adelina told Adam's mother that she believed Adam hurt A.C.S.

Mendiola testified the Department's plans for the children included nonrelative adoption, the children had lived in a foster-adopt home since the beginning of the case, and the foster-adopt family is meeting the children's developmental needs by taking the children to speech and occupational therapy. According to Mendiola, the foster parents love the children, want to adopt them, and are willing to provide them with a permanent, safe, and stable home. Mendiola testified Adelina provided the names of other possible placements for the children, but the Department conducted home studies and determined the placements were inappropriate.

The children's foster mother, Nancy, testified the children have been in her care since December 2015. She stated she has taken the children to all of their "well checks" and appointments for speech and occupational therapy. Nancy related she could not hold A.C.S. "like a normal baby" due to his injuries and having two leg casts for his broken bones. She further testified her family supports the adoption, and her family has the support of their friends and church. Nancy stated the children were not fearful of Adelina, but they were reluctant to attend visits.

Adelina's counselor Stephanie Valdez testified Adelina was not ready for discharge from counseling. According to Valdez, Adelina was honest, forthcoming, and had made some progress, but Adelina missed several months of counseling, lacked emotion about A.C.S.'s injuries, and was inconsistent about being able to determine what constituted a healthy environment for the children. Valdez stated Adelina sometimes had a medical reason for missing counseling, but other times Adelina did not attend or call to explain her absence.

Adam was called to testify, but repeatedly invoked his Fifth Amendment privilege against self-incrimination. The subject-matter of the Department's questioning included whether Adam was on probation for burglary, had numerous other pending criminal charges, lived with a

registered sex offender, had plans for the children, completed his family service plan, and violated a protective order.

Adelina testified on her own behalf. She stated her familial support included her sister and mother. She testified she is not in a relationship with Adam, they "completely separated" in October 2016, Adam does not know where she lives, and she would not attempt to contact or see Adam. Adelina explained she obtained an apartment with food, electricity, and beds for the children, and that the apartment is close to schools, daycare, a bus stop, a laundry facility, and a grocery store. She stated she was not on her medication at the time of trial because she determined she did not need to take her medication. Adelina testified her older sister could have caused A.C.S.'s injuries because her sister was with A.C.S. on Thanksgiving, but Adelina stated she was aware A.C.S.'s bone fractures were at different stages of healing.

## D. Best-Interest Finding Regarding Adam's Parental Rights

The children (ages five, two, and one at trial) did not testify. When children are too young to express their desires, the factfinder may consider whether the children have bonded with their current caregiver, are well-cared for, and whether the children have spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Although there is evidence showing S.S. was happy to see Adam at visits, there is evidence showing F.C.S. and A.C.S. bonded with Nancy and are well-cared for, Nancy plans to adopt all of the children, and A.C.S. had spent minimal time with Adam.

The evidence also supports an inference that Adam caused A.C.S.'s bone fractures. Adelina testified there were three people who could have caused A.C.S.'s injuries: her sister, Adam, and herself. Adelina testified she did not injure A.C.S. and although Adelina's sister was with A.C.S. during Thanksgiving, A.C.S.'s fractures were at different stages of healing, suggesting the fractures occurred on different days. Because this is a civil proceeding, the trial court was entitled

to draw reasonable adverse inferences from Adam's refusal to answer questions. *See In re C.J.F.*, 134 S.W.3d 343, 352-53 (Tex. App.—Amarillo 2003, pet. denied). There is evidence showing Adam was "in and out" of jail, has anger issues, and physically abused Adelina on multiple occasions. We hold a reasonable factfinder could have formed a firm belief or conviction that termination of Adam's parental rights is in the children's best interest. *See In re C.H.*, 89 S.W.3d at 25.

**E. Best-Interest Finding Regarding Adelina's Parental Rights**

Although it was undisputed at trial that S.S. has a bond with Adelina, there is evidence showing F.C.S. and A.C.S. have no bond with Adelina, as well as evidence showing F.C.S. and A.C.S. bonded with Nancy and are well-cared for, Nancy plans to adopt all of the children, and A.C.S. had spent minimal time with Adelina. Adelina had her parental rights to her two other children terminated for knowing endangerment, and she suggested during her testimony she did not recognize any problems with her parenting. Adelina also has anxiety, depression, and bipolar personality disorder, but admitted she unilraterally decided to stop taking her medication. She provided no financial support to the children after they were removed, and she had been arrested several times for various criminal offenses. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.) (holding evidence of a parent's "inability to maintain a lifestyle free from arrests and incarcerations . . . is also relevant to a best interest determination").

Adelina suspected or knew Adam caused A.C.S.'s injuries. And despite Adam's repetitive violent behavior toward her and A.C.S., Adelina continued to reunite with Adam and attempted to conceal their relationship from the Department. *See In re O.N.H.*, 401 S.W.3d at 688-89 (holding tolerating and minimizing another parent's endangering conduct is relevant to the factfinder's best-interest determination). Although Adelina testified she had made changes in her life, such as ending her relationship with Adam and finding a new apartment that would help her provide for

the children's needs, the trial court was not required to ignore Adelina's history of knowingly exposing herself and the children to Adam's violent conduct. *See id.* at 685-86. We hold a reasonable factfinder could have formed a firm belief or conviction that termination of Adelina's parental rights is in the children's best interest. *See In re C.H.*, 89 S.W.3d at 25.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice